[Crim. Nos. 3996, 4003. Third Dist. May 10, 1966.]

In re KENNETH EARL VAN BRUNT et al., on Habeas Corpus.

(Two Cases.)

W. Austin Cooper, under appointment by the District Court of Appeal, and Philip V. Sarkisian, for Petitioners.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, Edsel W. Haws and Daniel J. Kremer, Deputy Attorneys General, for Respondent.

FRIEDMAN, J.—Kenneth Van Brunt and Hugh Vizzard were committed to state prison in 1958 following their pleas of guilty to an armed robbery. In petitions for habeas corpus they attack their convictions, alleging primarily deprivation of their constitutional right to representation by legal counsel. A related issue is raised by the contention that at their preliminary examination the committing magistrate effectually deprived them of the protection of article I, section 8, of the California Constitution and Penal Code section 859a, which prevent a felony defendant from pleading guilty at his preliminary examination unless he is represented by an attorney.[1] Through court-appointed counsel they have stipulated that their petitions be considered together.

Van Brunt and Vizzard, then parolees from the California Youth Authority, were arrested in San Francisco on May 29, 1958. A Colt automatic pistol was found in their car. Both were 19 years old at the time but had managed to crowd extensive criminal experience into their brief years. Fresno police suspected them of holding up a Western Union office in Fresno on the night of May 19 and interviewed them at the San Francisco jail. In the course of the discussions defendants offered a ''deal'' according to which they would ''plead'' if the Fresno authorities would recommend their commitment to the Youth Authority. The officers rejected any deal. Peti-

---

[1]Article I, section 8, of the California Constitution declares in part: ''When a defendant is charged with the commission of a felony, by a written complaint subscribed under oath and on file in a court within the county in which the felony is triable, he shall, without unnecessary delay, be taken before a magistrate of such court. . . . If the felony charged is not punishable with death, the magistrate shall *immediately upon the appearance of counsel* for the defendant read the complaint to the defendant and ask him whether he pleads guilty or not guilty to the offense charged therein; thereupon, or at any time thereafter while the charge remains pending before the magistrate and *when his counsel is present,* the defendant may, with the consent of the magistrate and the district attorney or other counsel for the people, plead guilty . . . and upon such plea of guilty, the magistrate shall . . . certify the case . . . to the superior court, and thereupon such proceedings shall be had as if such defendant had pleaded guilty in such court.'' (Italics added.)

The pertinent portion of Penal Code section 859a is: ''If the public offense charged is a felony not punishable with death . . . while the charge remains pending before the magistrate and when his counsel is present, the defendant may, with the consent of the magistrate, and the district attorney or other counsel for the people, plead guilty to the offense charged . . . . The foregoing provisions of this section shall not be construed to authorize the receiving of a plea of guilty from any defendant not represented by counsel.''

tioners then made full confessions. They related how they had acquired the Colt automatic pistol, borrowed a car in Bakersfield, then driven to Fresno to commit a holdup. As they drove past the Fresno office of Western Union late at night they saw a man counting money. They went in. Three persons were in the front office, another in the rear. Vizzard held a pistol on the four victims while Van Brunt trussed them up. They took approximately $1,800 and left, returning to Bakersfield. Van Brunt used much of his share of the loot to pay off gambling debts. Vizzard purchased a Mercury automobile with most of his share of the holdup profits and the pair drove to San Francisco.

Unknown to them, their confession to the Fresno police was recorded on tape. They were not informed that they had a right to counsel and to silence. Their conversation, however, demonstrates that they were completely aware that they need tell the officers nothing. Both told the officers that they wanted to get to court as soon as possible, where they would take the stand and relate the facts of the robbery.

Petitioners were not masked during the Western Union robbery. They had been identified by three of the victims. The Colt pistol found in their automobile in San Francisco was the weapon used in the robbery in Fresno.

Petitioners were returned to Fresno and appeared in the Fresno Municipal Court on June 12, 1958. A certified copy of the minutes recites that petitioners were "duly informed of the charge against them and of all their legal rights . . . and questioned as to their ability to hire counsel." Ascertaining that Van Brunt had no ability to employ an attorney, the magistrate appointed Mr. Jefferson E. Hahesy as his attorney. The magistrate decided that Vizzard had "money or property" to hire counsel and refused to appoint counsel for him.[2] Although the magistrate fixed a date 11 days later, June 23, as the date for the preliminary examination, both defendants were brought before the same magistrate on the very next day, June 13. A deputy district attorney was present. Mr. Hahesy, Van Brunt's court-appointed counsel, was absent. According to his affidavit, Mr. Hahesy was not informed of the accelerated proceeding against his client and had no knowledge of it. The following colloquy occurred:

"THE COURT: Hugh R. Vizzard and Kenneth Van Brunt. The Court has been informed that you want to waive your

---

[2]Apparently the disqualifying asset was the Mercury car which Vizzard had bought with stolen money. It had been impounded by the police.

preliminary hearing by taking the stand under oath and making a statement which admits the offense. Before you tell me whether or not you want to do this, I must explain your legal rights and I will also explain the same to you, Mr. Van Brunt. You have a right to have a hearing in this court to see whatever evidence the People have against you and to see whether there is sufficient evidence against you to justify this Court in sending the matter to the Superior Court. If you have an attorney and don't want that hearing, you and the attorney can come into court and state you don't want the hearing and the Court will make the order without any defense or any statements at all, but if you have no attorney, the only way you can waive your preliminary hearing is to make—be sworn and make a statement under oath which admits the facts with which you are charged. If you do this, it must be voluntary, the People, the district attorney have a right to cross-examine you after you have taken the stand; and if you are going to plead not guilty in the Superior Court, I don't think you will want to do this. If your intention is to plead guilty there, I see no harm in your doing it. If you had an attorney, I think he would so advise you.

"Now, is it your desire, after I have stated your rights, to waive your preliminary hearing by being sworn and making a statement under oath?

"DEFENDANT VIZZARD: Yes.

"THE COURT: And that's true of you, Mr. Van Brunt, also?

"DEFENDANT VAN BRUNT: Yes.

"THE COURT: Very well. Mr. Vizzard—will you both stand and be sworn? I will take your statements one at a time, but you can be sworn together."

Both the defendants then took the witness stand and made sworn judicial confessions. The deputy district attorney elicited additional statements on cross-examination. Both were bound over to the superior court. The minutes of the municipal court recite that the accused requested permission to waive a preliminary examination; that the deputy district attorney consented; that the court granted the request; that the defendants then testified "on behalf of the People;" that the court ordered the defendants held to answer. Petitioners appeared in the superior court for arraignment on June 17. Mr. Hahesy was present and was appointed to represent both defendants. They immediately entered pleas of guilty and requested probation. At a subsequent court appearance Mr. Hahesy urged petitioners' youth as a reason for Youth

Authority commitment or a county jail term; probation was denied; petitioners were arraigned for judgment in the presence of Mr. Hahesy as their legal counsel and were sentenced to prison.

The writ of habeas corpus is available to set aside a conviction when the procedure leading to conviction violates the defendant's constitutional right to counsel. (*In re James*, 38 Cal.2d 302, 309-313 [240 P.2d 596].)

California law holds that persons accused of crime in any court of the state have a constitutional right to representation by counsel. (Cal. Const., art. I, § 13; *In re Newbern*, 53 Cal.2d 786, 790 [3 Cal.Rptr. 364, 350 P.2d 116]; *People* v. *Mattson*, 51 Cal.2d 777, 788-790 [336 P.2d 937]; *In re James*, *supra*, 38 Cal.2d at p. 310.) The right to counsel extends to the preliminary examination before a committing magistrate. (Cal. Const., art. I, § 8; Pen. Code, §§ 858-860; *Bogart* v. *Superior Court*, 60 Cal.2d 436, 440 [34 Cal.Rptr. 850, 386 P.2d 474].) The California right includes judicial appointment of counsel when the accused is financially unable to employ an attorney. (Pen. Code, § 859; *In re Newbern*, *supra*, 53 Cal.2d at p. 790.) A committing magistrate must initiate an inquiry into the defendant's desire to be represented by counsel and his ability to procure counsel and, if the defendant is unable to do so, assign competent counsel to conduct the defense. (*Bogart* v. *Superior Court*, *supra*, 60 Cal.2d at p. 439; *People* v. *Diaz*, 206 Cal.App. 2d 651, 661 [24 Cal.Rptr. 367].)

The California right to counsel is paralleled by certain protections which the federal Constitution extends to accused persons in state criminal proceedings. The Fourteenth Amendment makes the Sixth Amendment's guarantee of counsel obligatory upon the states, requiring publicly supplied legal representation for indigent felony defendants. (*Gideon* v. *Wainwright*, 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733].) When, under state procedures, the preliminary examination before a committing magistrate represents a critical stage in the prosecution, the federally protected right of counsel extends to the preliminary examination. (*White* v. *Maryland*, 373 U.S. 59 [83 S.Ct. 1050, 10 L.Ed.2d 193]; *Wells* v. *California*, 234 F.Supp. 467.)[3]

---

[3]In *People* v. *White*, 213 Cal.App.2d 171 [28 Cal.Rptr. 656], decided February 19, 1963, this court suggested the absence of any federally protected right to counsel at a preliminary examination. In view of *White* v. *Maryland*, *supra*, 373 U.S. 59, decided April 29, 1963, that generalization is no longer correct.

Article I, section 8, of the state Constitution and Penal Code section 859a (fn. 1, *supra*) preclude a guilty plea before a magistrate when the accused does not have the protection of counsel. Similarly, Penal Code section 860 permits a waiver of preliminary examination only when the defendant is represented by counsel. (*People* v. *White, supra,* 213 Cal.App.2d 171.) Established law requires rejection of the claim that petitioners' courtroom confessions were equivalent to prohibited pleas of guilt. Penal Code section 866.5 impliedly sanctions an unrepresented defendant's examination under oath at the preliminary hearing, provided he has first been advised of and waived his right to counsel.[4] *In re Berry,* 43 Cal.2d 838, 843-844 [279 P.2d 18], holds that the accused's voluntary confession before the magistrate *after a waiver of counsel* relieves the prosecution of the necessity of presenting further evidence; that the defendant's sworn statement satisfies the demand for a preliminary examination; that the magistrate's order holding the defendant to answer is not the equivalent of an order certifying the defendant after a plea of guilty. (See also *People* v. *Nation,* 108 Cal.App.2d 829, 831 [239 P.2d 891].) *In re Berry* rejects the notion that a defendant's statement of guilt at a preliminary examination may be classed as a guilty plea or as a waiver of preliminary examination.

Thus the pith of petitioners' argument is not that their confessions in the magistrate's court amounted to prohibited pleas of guilt, but that neither had first made an intelligent waiver of counsel. If a defendant makes such a waiver, his testimonial statement of guilt provides adequate foundation for his commitment. (*In re Berry, supra*; *In re Nation, supra.*) If he has not, his statement supplies no evidentiary foundation for a lawful commitment (*McCarthy* v. *Superior Court,* 162 Cal.App.2d 755 [328 P.2d 819] ; *People* v. *Williams,* 124 Cal.App.2d 32 [268 P.2d 156]) and the statement is inadmissible in evidence at his trial. (*People* v. *Mora,* 120 Cal.App.2d 896 [262 P.2d 594], disapproved on another point by *People* v. *Van Eyk,* 56 Cal.2d 471, 477 [15 Cal.Rptr. 150, 364 P.2d 326].) In this case the committing magistrate proceeded in the absence of one defendant's attorney, without adequately advising either defendant of the consequences, and with only a suppositious waiver of counsel.

[4]Penal Code section 866.5 states: ''The defendant may not be examined at the examination, unless he is represented by counsel, or unless he waives his right to counsel after being advised at such examination of his right to aid of counsel.''

The magistrate and the deputy district attorney apparently ignored Van Brunt's court-appointed attorney. On the record, the attorney received no notice that his client was being brought into court 10 days before the scheduled hearing. Indulging in the false assumption that Van Brunt had no attorney, the magistrate did not offer Van Brunt an opportunity to consult with the attorney before choosing the path of nonresistance. That the accused had chosen to drop the contest was inconsequential. ▮ Until his court-appointed counsel had been given an opportunity to participate or had been relieved in an orderly manner, the client had no competence to make that choice.[5] The attorney could have been relieved in the manner provided by the Code of Civil Procedure; since that step had not been accomplished, it was error to permit the accused to proceed in person. (*In re Martinez*, 52 Cal.2d 808, 813 [345 P.2d 449]; *People* v. *Merkouris*, 46 Cal.2d 540, 555 [297 P.2d 999]; cf. *In re Boyce*, 51 Cal.2d 699 [336 P.2d 164]; *In re Levi*, 39 Cal.2d 41 [244 P.2d 403].) The error was not merely procedural, but deprived the accused of his attorney's protection. To keep an attorney in ignorance of an occasion for his client's self-incrimination is as harmful as locking the attorney out of the courtroom. (Cf. *Escobedo* v. *Illinois*, 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977]; *People* v. *Arguello*, 63 Cal.2d 566, 571-572 [47 Cal.Rptr. 485, 407 P.2d 661].) ▮ To go forward with an essential proceeding without the attorney and without a waiver of his presence deprives the client of his constitutional right to counsel as effectively as an outright denial. (*People* v. *Hellum*, 205 Cal.App.2d 150, 154 [22 Cal.Rptr. 724].)

The record supports the inference that Vizzard, like Van Brunt, had been adequately informed of his right to counsel on June 12, when the two men first appeared before the magistrate. The record shows no waiver of counsel by Vizzard on June 12 or thereafter. Far from waiving counsel, Vizzard was denied court-appointed counsel and left to search for such legal assistance as the impounded Mercury might buy him. When he was brought before the magistrate the next day, apparently with his own concurrence, he had not yet made a waiver and the magistrate sought none. ▮ Although it was not necessary to advise him of his right to counsel each time he appeared in court, Penal Code section 866.5 required

---

[5] In *People* v. *Mattson, supra*, 51 Cal.2d 777, at page 782, the court observes: "[T]he court should not appoint counsel to defend an indigent and require that in so doing the attorney surrender any of the substantial prerogatives traditionally or by statute attached to his office. . . ."

that when he was brought to court for examination under oath, he be advised of his right to counsel on that occasion and that he waive that right. (*McCarthy* v. *Superior Court, supra,* 162 Cal.App.2d at pp. 757-758; *People* v. *Williams, supra,* 124 Cal.App.2d at p. 38.) That requirement was violated.

Although an accused may impliedly waive his right to representation, the courts indulge in every reasonable presumption against that waiver; the waiver must be unqualified and may be made only by a defendant who has been apprised of his rights and has an intelligent conception of the consequences of his act. (*People* v. *Douglas,* 61 Cal.2d 430, 434-435 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Phillips,* 229 Cal. App.2d 496, 503 [40 Cal.Rptr. 403]; see also *Johnson* v. *Zerbst,* 304 U.S. 458, 464 [58 S.Ct. 1019, 82 L.Ed. 1461, 146 A.L.R. 357].) Petitioners' expressed intent to plead guilty in the superior court was not equivalent to a waiver of counsel. (*In re Johnson,* 62 Cal.2d 325, 333 [42 Cal.Rptr. 228, 398 P.2d 420].) Their right to be furnished counsel did not depend upon a request; the court had to take the initiative. (*Carnley* v. *Cochran,* 369 U.S. 506, 513 [82 S.Ct. 884, 8 L.Ed.2d 70]; *Bogart* v. *Superior Court, supra,* 60 Cal.2d at p. 440.) The magistrate on June 13 failed to tell petitioners that they had a right to consult with counsel before making judicial confessions; failed to ask them whether they waived that right; failed to correctly apprise them of the consequences of their action. Indeed, the magistrate misstated the law by telling them that their courtroom confessions would amount to a "waiver" of preliminary hearing, when in fact Penal Code section 860 prohibits any such waiver by an unrepresented defendant. It is not possible to draw an intelligent waiver of counsel by either defendant out of the procedural errors permeating the June 13 hearing. In view of the denial of fundamental rights at the preliminary examination, petitioners' commitment was illegal.

Despite illegality of the commitment, the filing of the information gave the superior court jurisdiction to proceed, subject to a defense motion under Penal Code section 995 to set aside the information. (*People* v. *Elliot,* 54 Cal.2d 498, 503-505 [6 Cal.Rptr. 753, 354 P.2d 225]; *People* v. *White, supra,* 213 Cal.App.2d at pp. 175-176.) Failure to make such a motion waives irregularities in the commitment proceedings, including absence or nonwaiver of legal counsel. (Pen. Code, § 996; *In re Berry, supra,* 43 Cal.2d at p. 844; *People* v. *Phillips, supra,* 229 Cal.App.2d at p. 504; *People* v. *Diaz, supra,* 206 Cal.App.2d at p. 659; *People* v. *Greene,* 80 Cal.App.2d

745, 749 [182 P.2d 576].) If, however, an attorney assigned to represent an indigent defendant in the superior court fails to make a section 995 motion, then the circumstances should be examined to ascertain whether the defendant received adequate legal representation in the superior court. (*People* v. *White, supra,* 213 Cal.App.2d at p. 176.)

An affidavit of Mr. Hahesy, filed as a portion of the Attorney General's return to their order to show cause, declares that he has no independent recollection of the matter but has reviewed his notes made at the time of the incidents; that according to these notes he conferred separately with Van Brunt and Vizzard on June 13, 1958, and received an account of the facts from each; that on June 13, Vizzard told the attorney he wished to plead guilty; that on June 17 he appeared with both defendants in the superior court and they entered pleas of guilty. Also incorporated in the return is a transcript of the proceedings at the defendants' arraignment in the superior court on June 17. At that time Mr. Hahesy stated to the court that he had previously talked to both the defendants and had ascertained that there was no conflict of interest between them.

Following the Attorney General's return petitioners filed a traverse and supplemental affidavits. In their traverse they allege that their guilty pleas were induced by their incriminating statements made before the magistrate on June 13. Van Brunt's affidavit states that he talked to Mr. Hahesy on June 13 for about five minutes and told him that he intended to plead *not* guilty. Van Brunt's description of his desire to plead innocent is incredible. It is given the lie by the same day's proceeding before the magistrate and by Van Brunt's personal entry of his plea of guilty in the superior court four days later.

Vizzard's affidavit states that when he appeared in the superior court for arraignment ''about one minute'' elapsed between Mr. Hahesy's appointment to represent him and his plea of guilty. Vizzard makes no claim of an intention to plead innocent, nor does he deny Mr. Hahesy's averment that he and the attorney had conferred on June 13, four days before the arraignment. The fact that the plea of guilty was entered immediately following the attorney's appointment is irrelevant, since he had previously conferred with Vizzard and the latter's plea was the evident result of a deliberate and preconceived decision.

Although petitioners' interviews with Mr. Hahesy on June

13 were brief, so were the facts of guilt. Whether or not they informed the attorney they had already confessed to the police, the fact is that they had. So far as they knew, their confessions could be used against them as proof of guilt. Further, they had told the police that they wanted to ''go to court'' as soon as possible to tell the facts. To cap the incrimination, three of the holdup victims had identified them. Petitioners' traverse makes no attempt to deny or dent the existence of this mass of incrimination; does not deny the return's allegation that their confessions to the police were voluntary.[6] All petitioners' 1958 actions were consistent with intelligent recognition of overwhelming evidence of their guilt; consistent with an independent and informed choice to enter guilty pleas; inconsistent with their present claims of compulsion stemming from their tainted confessions before the magistrate; inconsistent with their present claim of perfunctory legal representation. ▮ We do not know whether their individual decisions to plead guilty were reinforced by advice from their court-appointed counsel. If so, that advice does not reflect on the adequacy of his representation, since the pleas were consistent with strong evidence of guilt. (*People* v. *Lindsey*, 56 Cal.2d 324, 328-329 [14 Cal.Rptr. 678, 363 P.2d 910] ; *People* v. *Rainey*, 125 Cal.App.2d 739, 741 [271 P.2d 144].) Under the circumstances there is no room for the belief that the attorney's participation in the arraignment supplied the form of legal representation without its substance.

▮ Inadequacy of legal representation infects a conviction only if the attorney's *failure results in loss of a crucial defense.* (*People* v. *Nicolaus,* \*(Cal.) 48 Cal.Rptr. 353, 409 P.2d 193; *People* v. *Ibarra*, 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487].) Inferably Mr. Hahesy knew that he had been bypassed by the magistrate. ▮ On the assumption that a motion under section 995 would have succeeded, an order setting aside the information would have barred neither further prosecution nor a new preliminary examination; there was ample evidence to support a finding of probable cause; thus the attorney's failure to make the motion cost his clients nothing of value. (*People* v. *White, supra,* 213 Cal.App.2d at p. 176.) Whether or not the attorney consciously considered such a motion, his failure to make it was not crucial.

---

[6]In habeas corpus cases the applicant's failure to traverse facts alleged in the return is regarded as an admission of their truth. (See cases cited Witkin, Cal. Criminal Procedure (1963) § 825, p. 791.)

\*A rehearing was granted on March 2, 1966.

In view of *White* v. *Maryland, supra,* 373 U.S. 59, petitioners' resort to Fourteenth and Sixth Amendment protection has substance only if the preliminary examination was a critical stage in the California prosecution. In *Wilson* v. *Harris,* 351 F.2d 840, the United States Court of Appeals for the 9th Circuit conducted a study of California preliminary examination procedures in the light of the "critical stage" concept. Quoting from an earlier federal decision, the court adopted the following criterion: " 'The test is whether that [preliminary examination] proceeding and what occurred thereat may adversely and prejudicially affect his defense to the charge in a subsequent trial.' " (351 F.2d at p. 844.) The court noted particularly that *People* v. *Mora, supra,* 120 Cal. App.2d 896, excludes trial evidence of the accused's incriminating statements made at a preliminary examination when he has not waived counsel. It observed that as a matter of California law: "No defenses which might be asserted at a subsequent trial can be lost at a preliminary examination." (351 F.2d at p. 844.) The court concluded that the California preliminary examination is not "in and of itself" a critical stage in the prosecution.

Persuaded by *Wilson* v. *Harris,* we need only determine whether the preliminary examination was a critical stage in this particular prosecution. Presumably, in their ignorance of the law petitioners did not know that their courtroom incrimination could not be used against them. The circumstances, however, demonstrate that they had decided to plead guilty before making these statements. Their pleas of guilt were the product of their informed and deliberate decisions, not of their later, improperly elicited courtroom confessions. (Cf. *In re Seiterle,* 61 Cal.2d 651, 657-658 [39 Cal.Rptr. 716, 394 P.2d 556].)

The orders to show cause are discharged and the writs denied.

Pierce, P. J., and Bray, J.,* concurred.

---

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.