[Crim. No. 4665. First Dist., Div. One. Aug. 9, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JOHN ANDERSON, Defendant and Appellant.

Elisbeth Lagomarsino, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jay S. Linderman, Deputy Attorneys General, for Plaintiff and Respondent.

MOLINARI, J.—Defendant appeals from the judgment of conviction upon a jury verdict finding him guilty of robbery in the first degree (violation of Pen. Code, § 211) and of possession of a firearm by a convicted felon (violation of Pen. Code, § 12021). The assignments of `error upon which this appeal is based are (1) that the admission at the trial of certain incriminating statements which defendant made to the police constituted error under *People* v. *Dorado,* 62 Cal. 2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], and (2) that the deputy district attorney was guilty of misconduct as a result of certain statements which he made during his closing argument to the jury.

### The Record

At approximately 11:15 on the evening of November 23, 1963, defendant entered the Clown Liquor Store located at

the corner of 43rd and Market Streets in Oakland and requested a bottle of Scotch liquor and a package of Salem cigarettes from the clerk, Mrs. Elsie Jenkins. Mrs. Jenkins gave defendant the items which he had requested, whereupon defendant pulled back his coat, revealed a gun, and said, " 'This is a stick up. . . . Put the money in the bag.' " Mrs. Jenkins activated a silent burglar alarm and then complied with defendant's demand, turning over approximately $73 from the cash register, including four $1 bills, the serial numbers of which had been recorded on a separate slip of paper which she retained. Defendant then left the store with two paper bags in his hand and began walking up 43rd Street.

Mrs. Jenkins immediately notified Mr. James Floyd, a tamale vendor who operated a stand in front of the liquor store and who had been sitting inside the store at the time of the robbery. Floyd picked up a gun which he kept nearby, pursued defendant, caught up to him and brought him back to the liquor store, defendant still carrying the two paper bags. As Floyd and defendant arrived back at the store, Officer Owsley of the Oakland Police Department arrived. Meanwhile defendant started to grapple with Floyd, trying to hammer the gun loose from Floyd's hand, and in order to terminate the fight, Owsley struck defendant over the head with his gun. Defendant fell to the ground, and Owsley handcuffed him and removed a gun from his jacket pocket.

Shortly thereafter Officer Donohue of the Oakland Police Department arrived and summoned an ambulance to take defendant to the hospital for treatment of his head wounds. The ambulance arrived and defendant was taken to Highland Hospital, where he remained for about 35 minutes. Subsequent to the hospital treatment and while defendant was sitting in the police car with Donohue at the hospital parking lot, Donohue talked with defendant about the incident at the liquor store, defendant being the first to state that he had been accused of robbing the store. Defendant then made the following statement to Donohue, which the latter took down in writing while defendant spoke: " 'I went in the liquor store to buy some liquor or some cigarettes. I walked up to the counter and bought a half pint of Scotch and a package of Salems. I walked out of the store and the old man put a gun in my side before I got out of the store. I don't remember robbing anything. They say I had a gun, but it belonged to the old man. I don't think I took it away from him. I

don't remember very much. Then this officer hit me alongside the head and handcuffed me. They say I tried to rob the place. I don't think I grabbed any money. I don't remember too much. I give this statement voluntarily and of my own free will.' '' Upon defendant's completion of this statement, Donohue, believing that defendant had finished his statement, asked defendant to sign the statement. Defendant refused to sign and remained mute. However, defendant suddenly started talking again, Donohue taking down defendant's words as follows: '' 'I got a daughter twelve years old that's going to have a baby and I went in the store to get $700 that she needs. She is in New Orleans.' '' Defendant also refused to sign this statement.

The third statement which was elicited from defendant and introduced into evidence at the trial consisted of a statement which defendant made to Officer Madsen in the Interrogation Room of the City Prison in Oakland at 11:10 a.m. on November 26, 1963. The written version of this statement, which was made by Madsen as defendant spoke and which he refused to sign, was read to the jury as follows: '' 'I tried, I tried to get some money. The gun I had got Friday night. I got it from a fellow I don't even know his last name on 7th Street. I paid him $15 for it. We was gambling and I gave him $5 and he was supposed to get it back from me when he got the money. It was four or five o'clock Saturday morning. It could have been five or seven, even six, that I got the gun. Saturday night I was walking around all over. I was on my way to the house. I really didn't have no intention of robbing anybody. I had the gun in my pocket, but I never did pull it out. I tried to get some money for the gun. She might have gotten frightened. When I got out of the store the old man pulled the pistol on me and said I robbed somebody, and I went back into the store and the next thing I knew the police was beating me over the head. When they handcuffed me and everything, they said something, some money on the sidewalk, the money the lady gave it to me. They said I pulled a pistol on her, but I didn't. I ain't never pulled a pistol on anybody. I had about two dollars and something on me when I was picked up.' ''

### Applicability of the Dorado Rule

Following the decision of the United States Supreme Court in *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], the California Supreme Court in *People* v.

*Dorado, supra,* 62 Cal.2d 338, held that a defendant's confession which was elicited under the following circumstances cannot be properly introduced in evidence: "(1) [T]he investigation was no longer a general inquiry into an unsolved crime but had begun to focus on a particular suspect, (2) the suspect was in custody, (3) the authorities had carried out a process of interrogations that lent itself to eliciting incriminating statements, (4) the authorities had not effectively informed defendant of his right to counsel or of his absolute right to remain silent, and no evidence establishes that he had waived these rights." (Pp. 353-354.)

█ As to the first two requirements of the *Dorado* rule, namely, that the defendant be in custody and that the investigation have begun to focus on the defendant, the recent case of *People* v. *Stewart,* 62 Cal.2d 571 [43 Cal.Rptr. 201, 400 P.2d 97], held in part that these two aspects of the accusatory stage defined by *Escobedo* and *Dorado* are fulfilled by the arrest of the defendant. Accordingly, since defendant made all of his statements to the police after he had been placed under arrest, we conclude that these two elements of the *Dorado* rule have been met in the instant case.

█ Furthermore, as to the fourth element of the rule, namely, that a defendant be advised of his right to counsel or to remain silent, insofar as the statement which defendant made at police headquarters is concerned, Madsen explicitly testified that he did not advise defendant of these rights. And as to defendant's earlier statements to Donohue, while the record does not indicate that defendant was so informed of his rights, in light of the holding in *Stewart* that we cannot presume, in the face of a silent record, that the police informed the defendant of his right to counsel or his right to remain silent, we are forced to conclude that this requirement of the *Dorado* rule has also been fulfilled in the case at bench.

Our only remaining consideration, therefore, is whether any or all of defendant's statements to the police were made pursuant to "a process of interrogations that lent itself to eliciting incriminating statements." As to this requirement, *Stewart* holds that the proper test in ascertaining whether a defendant's statements were obtained during the requisite process of interrogations is an objective one requiring that we "analyze the total situation which envelops the questioning by considering such factors as the length of the interrogation, the place and time of the interrogation, the nature

of the questions, the conduct of the police and all other relevant circumstances." (P. 579.) ▮ Where the record is totally devoid of such objective evidence or is so scanty with respect to the "factors" required by the *Stewart* test as to preclude an analyzation of the "total situation," we must assume that the interrogation is one that lent itself to eliciting incriminating statements. (*People* v. *North*, 233 Cal. App.2d 884, 888 [44 Cal.Rptr. 123]; *People* v. *Green, ante*, p. 1 [45 Cal.Rptr. 744]; and see *People* v. *Stewart, supra*, p. 578, wherein it is stated that in "most cases" an interrogation by the police lends itself to eliciting incriminating statements.)

Turning to the instant case, and beginning with a consideration of the first statement which defendant made while in the police car with Donohue, we find that the record before us is almost barren as to the manner by which this statement was elicited. The only evidence in the record relating to the details surrounding the rendering of this statement is contained in the *voir dire* of Donohue wherein he merely stated that, prior to the taking of the statement, he had talked to defendant about "what had allegedly happened at the store" and that defendant had told him that he had been accused of robbing the store.[1] The record discloses, moreover, that defendant made his statement to Donohue at 1:25 a.m. and Donohue testified that he arrived at the liquor store at approximately 12:30 a.m., that he then called an ambulance, which arrived and took defendant to Highland Hospital, and that defendant was undergoing treatment at the hospital for 35 to 40 minutes. Thus, it is apparent that if Donohue did conduct an interrogation prior to defendant's making of his statement, such interrogation must indeed have been of short duration.

Insofar as the second statement made by defendant to Donohue in the police car at the hospital is concerned, the record discloses that in response to defense counsel's question, "And then did you ask him some more questions?", Donohue testified: "I did not. He came out with this of his own volition. As far as I was concerned the statement was

---

[1]Donohue's testimony was as follows: "MR. HOOLEY: [Assistant Public Defender] Did you talk to him about what had allegedly happened at the store? A. Yes, I did. Q. Before you took the statement? A. Well, it was an opening conversation to the statement. Q. Did you tell him that they said that he had robbed the place? A. No, he told me. Q. That they said he had robbed it? A. That's correct."

terminated and then he came out with this of his own volition." This testimony suggests that the statement, considered by itself, was unsolicited and therefore not within the proscription of *Dorado*. However, since this second statement was made upon the completion of the first statement it must be considered in the light of the total situation which enveloped the making of the first statement. Adverting to defendant's third statement, namely, that which he made to Madsen at Police Headquarters, we again note that the record before us is almost completely devoid of any of the details surrounding the rendering of this statement excepting that it was made by defendant while he was in an interrogation room at Police Headquarters, coupled with the fact that the questioning by Madsen began at 1 a.m. and defendant made his statement at 11:10 a.m., some 10 hours later.

Considering the circumstances under which each of the statements was made, we are satisfied that in the light of the principles announced in *Stewart* and *North,* each of the statements was obtained pursuant to a process of interrogations lending itself to the eliciting of incriminating statements. As to the first and second statements, which were interrelated and were made at the same time and place, we must assume that they were elicited by a process of interrogations because the evidence as to the factors attendant to the interrogation is too scanty to permit us to make an analyzation of the total situation which enveloped the questioning. ▮ Insofar as the third statement is concerned, the questioning of defendant in an "interrogation room" at Police Headquarters commencing at 1 a.m. and the making of the statement by him some 10 hours later are factors which impel us to conclude that the statement was obtained during the requisite period of interrogation. (See *People* v. *Bilderbach,* 62 Cal.2d 757, 761-762 [44 Cal.Rptr. 313, 401 P.2d 921].)

Having concluded that each of the incriminating statements was made under the proscription of *Dorado,* we proceed to consider whether any is a confession so as to require an automatic reversal. In *Dorado,* it was held that an improper introduction into evidence of a confession which has been obtained in violation of the defendant's constitutional right to counsel results in a denial of due process and that the error is necessarily prejudicial so as to preclude the application of the harmless error rule. (P. 356; see also *People* v. *Schader,* 62 Cal.2d 716, 728 [44 Cal.Rptr. 193, 401 P.2d

665].) However, where the incriminating statements do not amount to a confession the harmless error rule is applicable, and we must examine the record to determine if the introduction of the statements resulted in prejudice to defendant under article VI, section 4½ of the California Constitution. (*People* v. *Hillery,* 62 Cal.2d 692, 712 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Robinson,* 62 Cal.2d 889, 896 [44 Cal.Rptr. 762, 402 P.2d 834]; *People* v. *Schader, supra,* p. 728; *People* v. *Beverly,* 233 Cal.App.2d 702, 713-714 [43 Cal.Rptr. 743]; see *People* v. *Dorado, supra,* p. 356; and see *People* v. *Watson,* 46 Cal.2d 818, 835-838 [299 P.2d 243].)

Adverting to the first statement in the light of the last-mentioned principles, we conclude that this statement is not a confession. It is essentially a denial qualified with a repeated ''I don't remember.'' The only damaging effect of this statement consists in the fact that it served to weaken defendant's testimony at the trial to the effect that he did not buy any liquor at the store and that the brand of cigarettes which he bought was Pall Malls, not Salems, defendant testifying that ''I don't smoke Salems.'' Defendant's second statement to Donohue that he went into the store ''to get $700'' for his daughter's needs falls into the category of admissions rather than confessions, since in the first place, it is only inferrable from this statement that defendant intended to obtain the money by criminal means, and in the second place, even if we make this first inference, the statement does not tell us that defendant intended to take the money by means of force or fear, which elements are essential to the crime of robbery. (See *People* v. *Russell,* 118 Cal. App.2d 136, 138 [257 P.2d 39]; *People* v. *Reade,* 197 Cal. App.2d 509, 510 [17 Cal.Rptr. 328]; *People* v. *Clayton,* 218 Cal.App.2d 364, 367 [32 Cal.Rptr. 679].) A confession is a statement made by a defendant disclosing his guilt of the crime with which he is charged and excluding the possibility of a reasonable inference to the contrary. (*People* v. *Speaks,* 156 Cal.App.2d 25, 34 [319 P.2d 709]; *People* v. *Ferdinand,* 194 Cal. 555, 568-569 [229 P. 341]; *People* v. *Beverly, supra,* p. 712.) When a statement of guilty conduct is such that it contains only facts from which guilt may be inferred it is an admission rather than a confession. (*People* v. *Elder,* 55 Cal.App. 644, 646 [204 P. 29]; *People* v. *Luzovich,* 127 Cal.App. 465, 469 [16 P.2d 144]; *People* v. *Fowler,* 178 Cal. 657, 664-665 [174 P. 892]; *People* v. *Wilkins,* 158 Cal. 530, 534-535 [111 P. 612].)

■ The third statement, made to Madsen at Police Headquarters, is clearly not a confession of robbery since it consists of a denial coupled with exculpatory statements. (See *People* v. *Roberts,* 63 Cal.2d 84, 90 [45 Cal.Rptr. 155, 403 P.2d 411] ; *People* v. *Robinson, supra,* p. 896.) However, as to the second count with which defendant was charged, namely, the possession of a firearm by a convicted felon, the statement is clearly a confession. We note though that defendant testified on direct examination that he had a gun in his possession when he entered the store, but that he did not exhibit it to Mrs. Jenkins, and that on cross-examination he stated that he was carrying the gun in his jacket pocket but that he did not show Mrs. Jenkins the gun. We are thus called upon to decide whether the fact that defendant made a testimonial confession will allow us to consider the harmless error rule in relation to the erroneous admission of his extrajudicial confession. In *People* v. *Davis,* 62 Cal.2d 791, 797 [44 Cal.Rptr. 454, 402 P.2d 142], we find the following statement: ''Even if we assume that in some cases a testimonial confession can make harmless the erroneous admission of an extrajudicial confession, defendant's testimony in this case did not do so. His testimony was not only impelled by the erroneous admission of the extrajudicial confession, but would have supported a verdict of second degree murder. The erroneously admitted confession rebutted his defense that he was guilty of no more than second degree murder. Whether or not its admission into evidence was necessarily prejudicial, it is reasonably probable that had it been excluded, a result more favorable to defendant would have been reached. Accordingly, the error resulted in a miscarriage of justice. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 836 [299 P.2d 243]. . . .)''

Following the decision in *Davis,* the Supreme Court was called upon in *People* v. *Clark,* 62 Cal.2d 870 [44 Cal.Rptr. 784, 402 P.2d 856], to determine whether the erroneous admission of improperly secured extrajudicial statements was cured when two of the defendants took the stand and testified to most of the facts contained in their previously introduced extrajudicial statements. Without deciding whether the statements were confessions or admissions, the reviewing court held that their prejudicial effect was not cured by the defendants taking the stand and testifying to the same facts since the only evidence in the People's case in chief connecting these defendants with the crime charged consisted of the

extrajudicial statements. The rationale of *Clark* was that had the court been cognizant of the rule to be declared by *Escobedo* and *Dorado* it would have granted the motion for an advisory verdict in the defendants' favor at the conclusion of the People's case, and the defendants would not have been compelled to proceed with a defense under circumstances wherein they would have otherwise rested.

More recently, in *People* v. *Nye*, 63 Cal.2d 166 [45 Cal.Rptr. 328, 403 P.2d 736], certain extrajudicial statements not amounting to a confession were admitted as part of the prosecution's case in chief. In his defense the defendant took the stand to testify to the lie of these statements. His testimony, however, went far beyond the relatively innocent conduct related in these statements. In light of this fact and the substantiality of the evidence in support of the prosecution's case, the Supreme Court held that the admission of the defendant's extrajudicial statements was not prejudicial under the harmless error rule because the defendant was not impelled by the improper introduction of these statements to testify in order to discount their effect. Stated the court, "[I]t must be deemed beyond dispute that he chose to testify in order to discount the very incriminating testimony of the prosecution's witnesses." (P. 175.)

 Analyzing the instant case in the light of these cases, we are satisfied from the record that defendant was not impelled by the improper introduction of a prior confession to testify in order to discount the effect of his prior statements. Unlike the situations in *Davis* and *Clark* the evidence adduced by the prosecution consisted of much more than defendant's extrajudicial statements. It is reasonable to conclude from all of the attendant circumstances that defendant chose to testify in order to discount the very incriminating testimony of the prosecution's eyewitnesses, Mrs. Jenkins, Floyd and Owsley. The testimony of these witnesses was ample to sustain a conviction of robbery, and that of Mrs. Jenkins and Owsley sufficient to sustain the charge of gun possession, without the evidence of defendant's extrajudicial statements. It is apparent by his testimony that he did not intend to rob the store, that he did not rob the store, that he did not exhibit a gun to Mrs. Jenkins, and that all he remembered was entering the store, buying a package of Pall Malls, and then leaving the store, that defendant was seeking to overcome the overwhelming evidence against him on the

robbery charge rather than his extrajudicial statements which, aside from the one in which he stated he went into the store to get $700 for his daughter, were essentially exculpatory in nature. It is equally apparent that his testimonial confession regarding the possession of the gun was not impelled by his extrajudicial statement to Madsen that he had a gun in his possession when he went into the store, since defendant was aware that both Mrs. Jenkins and Owsley had testified as to his possession of the gun; rather, this testimonial confession was motivated by his desire to convince the jury that he did not intend to rob the store and that he did not rob it because the gun was concealed in his jacket pocket and he did not exhibit it to Mrs. Jenkins. To bolster this assertion he explained that he was merely carrying the gun in his jacket pocket because he had acquired it a few hours earlier as security for a gambling debt. In view of all these circumstances we must conclude that the error in admitting defendant's confession as to the possession of the gun was not prejudicial per se.

In view of the conclusions reached the case is left in the posture where all of defendant's extrajudicial statements, although erroneously admitted, must be considered under section 4½ of article VI of the California Constitution, which requires us to decide, after an examination of the entire cause, if it is reasonably probable that a result more favorable to defendant would have been reached in the absence of the introduction of such statements. Upon an examination of the record and on the basis of the abundance of properly admitted evidence establishing defendant's guilt as to both counts, we are persuaded that the error in admitting defendant's extrajudicial statements was not prejudicial in that, in the absence of the error, it is not reasonably probable in view of the totality of the situation that a result more favorable to defendant would have been reached.

### Misconduct of the Prosecuting Attorney

Defendant's second contention on appeal relates to a certain remark which the deputy district attorney made in his closing argument to the jury. Concerning the working order of the gun which defendant had in his possession at the time of the robbery, the prosecutor stated, "He made one other remark about whether or not this thing works (indicating). It works. I think His Honor would object to this because you would foul up his jury room, but there are some cartridges in

evidence and you could test it if you want to. But I will tell you that it does work.'' ▉ Defendant argues that this comment by the prosecutor amounted to his personal testimony of a fact not in evidence and was therefore misconduct on his part requiring a reversal of defendant's conviction. This contention is without merit. There was some evidence in the record concerning the working order of defendant's gun. On cross-examination of defendant, the prosecutor showed defendant a gun which defendant recognized as the one he had had at the robbery. The prosecutor then asked defendant, ''Will it work; will the trigger work? Will it cock the hammer of the revolver?'' Defendant responded, ''If it is the gun, it should.'' Thus, while the prosecutor's statement might, at first blush, appear to be testimony on his part as to the working order of the gun, in the light of defendant's testimony, such statement did not constitute ''new evidence'' but merely a conclusion deducible from such testimony. As such, the prosecutor's statement would come within the scope of permissible argument. (See Witkin, Cal. Criminal Procedure (1963) § 444, pp. 446-447, and cases therein cited.)

▉ Assuming *arguendo* that the prosecutor's statement constituted ''new evidence'' rather than legitimate argument, it was not prejudicial to defendant's case since such evidence was unnecessary to establish defendant's guilt of armed robbery. As has been pointed out in several California cases, a conviction of first degree (armed) robbery can be sustained where it is established that the defendant was armed with a gun regardless of whether the gun was in working order or was in fact a real gun. (*People* v. *Ekstrand,* 28 Cal.App.2d 1, 7 [81 P.2d 1045]; *People* v. *Raner,* 86 Cal. App.2d 107, 111 [194 P.2d 37]; *People* v. *Coleman,* 53 Cal. App.2d 18, 28-29 [127 P.2d 309]; *People* v. *Ward,* 84 Cal. App.2d 357, 360 [190 P.2d 972].) Nor must the defendant use or attempt to use the gun or even display it in order to be found guilty of armed robbery. ''Whether or not they exposed these deadly weapons in order to carry out their criminal act is of no consequence. The fact that they had them in their possession available for immediate use is sufficient to bring the case within the statute. 'Armed' with a dangerous weapon means furnished or equipped with weapons of offense or defense.'' (*People* v. *Hall,* 105 Cal.App. 359, 361 [287 P. 533]; see also CALJIC No. 210-C.) In the case of *People* v. *Mack,* 171 Cal.App.2d 631, 632 [341 P.2d 334], a situation almost identical to the facts in the case at bench, the clerk at

the store at which the robbery took place testified that the defendant pulled back his coat and she saw the handle of a gun protruding from the waistband of his trousers. On appeal the court affirmed the defendant's conviction of first degree robbery solely on the basis of this witness' testimony that she was positive she had seen a gun in the defendant's waistband. So, too, in the instant case the jury was entitled to return a verdict of first degree robbery against defendant based solely on the testimony of the several witnesses that defendant had a gun in his possession at the time of the commission of the robbery.

Finally, even if we were to assume that the prosecutor's statement constituted misconduct, defendant has waived his right to assert such misconduct on this appeal. The general rule with respect to alleged misconduct of the prosecuting attorney is that where no objection is made to such conduct by the defendant at the trial, it will not furnish grounds sufficient to justify the reversal of the judgment. There are two exceptions to this rule: One is where the case is closely balanced and there is grave doubt as to the defendant's guilt; the other where the act done or remark made is of such character that a harmful result cannot be obviated or cured by any retraction of counsel or instruction of the court. (*People* v. *Berryman,* 6 Cal.2d 331, 337 [57 P.2d 136].) In the instant case, defendant made no objection at the trial to the prosecutor's remarks during closing argument. Since this case is not one in which there is grave doubt as to defendant's guilt nor is it one in which the prosecutor's remarks could not have been cured by retraction of counsel or by an appropriate instruction of the court, we conclude that the failure of defendant to interpose a timely objection at the trial precludes us from reversing the judgment on the basis of the prosecutor's statements. (See *People* v. *Berryman, supra,* p. 337; *People* v. *Lyons,* 50 Cal.2d 245, 262 [324 P.2d 556]; *People* v. *Hampton,* 47 Cal.2d 239, 240-241 [302 P.2d 300]; *People* v. *Swayze,* 220 Cal.App.2d 476, 495 [34 Cal.Rptr. 5]; *People* v. *Beverly, supra,* 233 Cal. App.2d 702, 724 [43 Cal.Rptr. 743].)

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.