[Crim. No. 7855. In Bank. Mar. 14, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. TOMMY SPENCER, Defendant and Appellant.

Joseph M. Rosen, under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk and Thomas C. Lynch, Attorneys General, William E. James, Assistant Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Plaintiff and Respondent.

TOBRINER, J.—The jury found defendant guilty of kidnaping for the purpose of robbery (Pen. Code, § 209) and of first degree murder (Pen. Code, §§ 187, 189), and fixed the penalty at death. The trial judge denied defendant's motion for a new trial and for a reduction of penalty. This appeal comes to us automatically under Penal Code section 1239, subdivision (b).

Defendant contends that his confession was improperly admitted at the guilt trial because he had not been informed of his rights to silence and to counsel prior to the time he confessed; he also urges that improper comments by the district attorney and an inadmissible confession infected his penalty trial with error. Since we conclude that the introduction of defendant's confession at the guilt trial constituted reversible error under *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado* (1965) 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], we need not reach the issues raised by defendant's other contentions.

The essential facts stand uncontradicted. Late in the evening of May 3, 1963, two sailors on liberty, Billy Jack and Paul Clements, were hitchhiking from San Diego to Hermosa Beach. Defendant and his codefendant, William Atlas, picked up the sailors in their automobile in Long Beach. Shortly thereafter, defendant and Atlas stopped the car and went into a liquor store to purchase some wine; upon returning, they were unable to start the car. The sailors left the car and attempted to obtain another ride, but they were soon picked up again by defendant and Atlas, who had finally managed to start their car.

When Atlas turned the car off the highway leading to Hermosa Beach, Clements said that he and Jack would leave the car. Defendant, holding a gun, replied, ''No, you are going to take a little ride with us.'' Defendant then demanded that the two sailors give him their valuables; this they did. Shortly thereafter, defendant ordered Jack and Clements out of the car and onto the ground. After they complied, defendant fired

several shots; one struck Jack in the head, another in the back, and a third in the neck, fatally wounding him. Clements was not hit.

Defendant and Atlas drove away but soon stopped their car in order to push a woman's stalled automobile. As they pushed the automobile to a gas station, a tire on their own car went flat. The woman agreed to pay for the flat, and defendant accompanied her to her home in order to secure the money. At this point the police arrived at the intersection where the gas station was located and arrested Atlas; as soon as defendant returned, the police arrested him as well. The police found the stolen goods in the possession of defendant and Atlas; they found a gun upon defendant.

After taking defendant and Atlas to the police station in the early morning of May 4, the police subjected both suspects to a tape-recorded interrogation. Defendant related most of the above facts but insisted that he, rather than Atlas, had been the driver, and that Atlas alone had perpetrated both the robbery and the killing. Atlas, on the other hand, claimed that he was the driver; he accused defendant of the robbery and shooting.

Later the same day, during a second recorded interrogation at the police station, defendant confessed that he had committed the robbery and the shooting. He said that he had fired the shots only to induce the sailors to keep their heads down and that he had not intended to hit either of them. In another recorded statement, however, Atlas stated that defendant had told him that he intended to shoot the sailors; Atlas claimed that defendant's declaration took him by surprise and that he tried to persuade defendant to abandon any such plan.

After the court admitted into evidence all of these recorded statements, both Atlas and defendant testified. Atlas' testimony coincided in substance with his earlier statements. Defendant's testimony consisted generally of a repetition of the statements that he had given during the second interrogation. He again admitted picking up the sailors with the intention of robbing them; he said that after he had robbed them he told them to get out of the car and onto the ground: he admitted shooting one of the sailors but insisted that he had only intended to fire some shots to frighten them into keeping their heads down. He added that he had had a great deal to drink.

Clements, the surviving sailor, testified at the trial, identi-

fying defendant as the one who had shot his companion. Defendant offered no evidence contradicting his guilt; the jury returned verdicts finding defendant and Atlas guilty of first degree murder and kidnaping for robbery. The jury fixed defendant's penalty at death and Atlas' at life imprisonment without possibility of parole; the trial court modified Atlas' punishment to life imprisonment with possibility of parole but ordered that defendant Spencer suffer the penalty of death.

■ [See fn. 1] Applying the principles established by *Escobedo* v. *Illinois, supra,* 378 U.S. 478, and *People* v. *Dorado, supra,* 62 Cal.2d 338,[1] we have concluded that the trial court committed reversible error in admitting defendant's confession in evidence.

■ Turning initially to the admissibility of the confession, we note that defendant's first recorded interrogation took place at the police station at least two hours after he had been arrested. Later in the day, when defendant abandoned the position he had previously taken and confessed to the robbery and shooting, he remained in custody and at that point was subjected to a process of interrogation that manifestly lent itself to eliciting incriminating statements. The accusatory stage had thus been reached; defendant was therefore constitutionally entitled to remain silent and to consult counsel. (*People* v. *Stewart* (1965) 62 Cal.2d 571, 577 [43 Cal.Rptr. 201, 400 P.2d 97], affd. *sub nom. Miranda* v. *Arizona, supra,* 384 U.S. 436, 497-499; *Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490-491; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353-354.)

■ Since the record before us does not affirmatively indicate that defendant had been advised of his rights to silence and to counsel or that he was aware of these rights and chose to waive them, we hold that the trial court erred in admitting defendant's confession into evidence. (*Escobedo* v. *Illinois, supra,* 378 U.S. 478, 490 fn. 14; *People* v. *Stewart, supra,* 62 Cal.2d 571, 581, affd. *sub nom. Miranda* v. *Arizona, supra,* 384 U.S. 436, 497-499; *People* v. *Dorado, supra,* 62 Cal.2d 338, 353.)

---

[1] Although the instant trial began before the United States Supreme Court decided *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], the judgment of conviction was not final before the date of the *Escobedo* decision. Accordingly, the present appeal is governed by the principles established in *Escobedo* and *Dorado* but not by the further guidelines enunciated in *Miranda.* (*People* v. *Rollins* (1967) 65 Cal.2d 681 [56 Cal.Rptr. 295, 423 P.2d 221].)

Having concluded that defendant's confession should not have been admitted into evidence, we consider next whether its erroneous introduction caused prejudice to defendant.
 We have held that use of a confession violative of *Escobedo* and *Dorado* necessarily compels reversal of the resulting conviction since a confession so completely shatters a defendant's case that its erroneous use at his trial works incalculable damage and precludes a finding of harmless error notwithstanding overwhelming extrinsic evidence of guilt. (*People* v. *Schader* (1965) 62 Cal.2d 716, 728-731 [44 Cal. Rptr. 193, 401 P.2d 665] ; *People* v. *Dorado, supra,* 62 Cal.2d 338, 356; *People* v. *Parham* (1963) 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001].)

The State contends that, since the jury in this case heard the defendant admit his guilt on the witness stand, the use of defendant's unlawfully obtained confession should be deemed harmless error on the theory that defendant's extrajudicial statement probably played little if any role in the jury's deliberation. (See *Motes* v. *United States* (1900) 178 U.S. 458, 475-476 [44 L.Ed. 1150, 20 S.Ct. 993] ; *People* v. *Combes* (1961) 56 Cal.2d 135, 148 [14 Cal.Rptr. 4, 363 P.2d 4] ; cf *People* v. *Jacobson* (1965) 63 Cal.2d 319, 330-331 [46 Cal. Rptr. 515, 405 P.2d 555] ; *People* v. *Cotter* (1965) 63 Cal.2d 386, 398 [46 Cal.Rptr. 622, 405 P.2d 862].) Even if we assume that the United States Constitution would permit the application of a harmless error rule under such circumstances,[2] we could not rest affirmance of the judgment solely upon our evaluation of the minor effect of defendant's confession upon the *jury*; we must still weigh its impact upon defendant's *trial*.

In determining the effect of defendant's extrajudicial confession upon the outcome of the instant trial, we must consider the likelihood that it contributed to the verdict by *in-*

---

[2]The United States Supreme Court has recently stated that the introduction of a *coerced* confession ''can never be treated as harmless error.'' (*Chapman* v. *California* (1967) 386 U.S. 18, 23 & fn. 8 [17 L.Ed. 2d 705, 87 S.Ct. 824] (dictum).) The court indicated in *Chapman* that it would decide on a case-by-case basis whether each particular class of constitutional violations gives rise to automatically reversible error. We have held, however, that ''In determining the prejudicial effect of [an] illegally obtained confession at trial we are not concerned with the nature of the error that caused the illegality. The *reason* that the confession should not have been introduced into evidence is no longer material. . . . It is because of the effect of the confession that the reversal is compelled.'' (*People* v. *Schader, supra,* 62 Cal.2d 716, 729-730; see also *People* v. *Dorado, supra,* 62 Cal.2d 338, 356.)

*ducing* the defendant to admit his guilt in open court.[3] If the improper use of defendant's extrajudicial confession impelled his testimonial admission of guilt, we could hardly sustain his conviction on the theory that his confession to the police, although inadmissible, merely duplicated his subsequent confession to the jury; in that event we could not, in order to shield the resulting conviction from reversal, separate what he told the jury on the witness stand from what he confessed to the police during interrogation.[4] In effect, defendant's testimonial admission would then merge into his extrajudicial confession, and the instant case would be indistinguishable from one in which the only confession in evidence had been unlawfully obtained. In such a case, not even overwhelming evidence of guilt apart from the confession could purge the

[3]We recognized as much in *In re Seiterle* (1964) 61 Cal.2d 651, 657 [39 Cal.Rptr. 716, 394 P.2d 556], when we found it necessary to determine whether "the existence of [a confession obtained in violation of *Escobedo*] caused [defendant] to plead guilty. . . ." Although we reached a determination adverse to the defendant in *Seiterle,* we did so only because "his initial plea, closest in time to the confession, was one of not guilty . . . and his testimony at the reference hearing did not point to the confession as the motivation for the change of plea but was to the effect, now established to be false, that the motivation was misconduct by [the deputy district attorney]." (*In re Seiterle, supra,* 61 Cal.2d 651, 657-658.)

Similarly, in *People* v. *Enriquez* (1967) 65 Cal.2d 746 [56 Cal. Rptr. 334, 423 P.2d 262], in an affidavit filed three months after the *Escobedo* decision, the defendant "averred that he [had] pleaded guilty because he had been assured by his counsel that the charged offenses were misdemeanors" (65 Cal.2d at p. 748), not because a confession violative of *Escobedo* had been introduced at his preliminary hearing; we thus concluded that "the plea of guilty was not induced by the improperly secured confession . . . ." (65 Cal.2d at p. 747.)

Neither *Seiterle* nor *Enriquez* casts doubt upon the established principle that a guilty plea cannot stand if prompted by fear that an unlawfully obtained confession may be used at trial. (*Herman* v. *Claudy* (1956) 350 U.S. 116, 122 [100 L.Ed. 126, 76 S.Ct. 223]; *Wright* v. *Dickson* (9th Cir. 1964) 336 F.2d 878, 882 [plea invalid if "induced by incriminating statements obtained by . . . interrogation [violative of *Escobedo*]"]; *United States* ex rel. *Vaughn* v. *LaVallee* (2d Cir. 1963) 318 F.2d 499 (dictum); *United States* ex rel. *Cuevas* v. *Rundle* (E.D.Pa. 1966) 258 F.Supp. 647, 656-659.)

Even in *People* v. *Jacobson, supra,* 63 Cal.2d 319, affirming a conviction on the theory that the unlawfully obtained confession merely duplicated one lawfully obtained, only the *sequence* of the confessions relieved us of the need to ascertain whether "the legally obtained confessions were 'induced' by those subsequently improperly obtained." (63 Cal.2d at p. 331.) (See also *People* v. *Cotter, supra,* 63 Cal.2d 386, 398; cf. *In re Van Brunt* (1966) 242 Cal.App.2d 96, 109 [51 Cal.Rptr. 136], in which the court noted that petitioners' "pleas of guilt were the product of their informed and deliberate decisions, not of their *later,* improperly elicited . . . confessions." (Italics added.))

[4]*People* v. *Smith* (1966) 63 Cal.2d 779, 803 [48 Cal.Rptr. 382, 409 P.2d 222]; *People* v. *Gilbert* (1965) 63 Cal.2d 690, 701 [47 Cal.Rptr.

error of its presumptively prejudicial effect. (*People* v. *Schader, supra*, 62 Cal.2d 716, 728-731; *People* v. *Dorado, supra*, 62 Cal.2d 338, 357; *People* v. *Parham, supra*, 60 Cal.2d 378, 385.)

In evaluating the possibility that the erroneous introduction of defendant's extrajudicial confession might have induced his subsequent testimonial confession, we must assess defendant's reaction to the use of his confession at trial on the basis of the information then available to him; as we shall see, that information might easily have misled him.

In *People* v. *Jones* (1944) 24 Cal.2d 601 [150 P.2d 801], we considered the distinct but cognate problem of when a "subsequent confession [should be deemed] the result of the same influence which rendered [a] prior confession inadmissible . . ." (*Id.*, at p. 609.) In concluding that the second confession in *Jones*, although not manifestly coerced, was no less tainted than the first, we noted that the police did not appear to have "cautioned defendant that his previous [coerced] confession could not be used against him." (*Id.*, at p. 610.) "For want of such information," we said, "defendant might have concluded that he could not make his case worse than he already had made it and, under this [erroneous] impression, might have made the statements [which comprised his second confession]." (*Ibid.*)[5]

[See fn. 6] Since the trial in this case occurred in 1963, before the date of the *Escobedo* or *Dorado* decisions, the defendant here, like the defendant in *Jones*, could not have known that his previous confession should have been excluded and that its introduction in evidence constituted reversible error.[6] Believing his confession admissible, defendant might have taken the stand in order to explain its most damaging features or to emphasize the extenuating circumstances

909, 408 P.2d 365]; *People* v. *Luker* (1965) 63 Cal.2d 464, 479 [47 Cal. Rptr. 209, 407 P.2d 9]; *People* v. *Polk* (1965) 63 Cal.2d 443, 449 [47 Cal.Rptr. 1, 406 P.2d 641]; *People* v. *Clark* (1965) 62 Cal.2d 870, 881 [44 Cal.Rptr. 784, 402 P.2d 856]; *People* v. *Davis* (1965) 62 Cal.2d 791, 796 [44 Cal.Rptr. 454, 402 P.2d 142].

[5]See McCormick, Evidence (1954) § 114, p. 237 & fn. 3; cf. *Developments in the Law, Confessions* (1966) 79 Harv.L.Rev. 935, 1027.

[6]At the very least, it is clear that defendant's decision to repeat his confession at trial did not constitute a waiver of the *Escobedo-Dorado* objection to the admissibility of his confession. One who chooses, with the advice of counsel, to reiterate a confession in open court might properly be deemed to have waived those objections which were then available to him, but surely not those which he had no reason to anticipate. (Cf. *People* v. *Treloar* (1966) 64 Cal.2d 141, 143-144 [49 Cal.Rptr. 100, 410

surrounding his crime; or he might simply have concluded that the prosecution's use of his confession had rendered further resistance futile and had made it imperative that he appear as cooperative as possible. (Cf. *People* v. *Stockman* (1965) 63 Cal.2d 494, 502 [47 Cal.Rptr. 365, 407 P.2d 277]; *People* v. *Clark, supra,* 62 Cal.2d 870, 881; *People* v. *Anderson* (1965) 236 Cal.App.2d 419, 429 [46 Cal.Rptr. 1].) Because *Escobedo* and *Dorado* had not yet been decided, however, the defendant had no opportunity to probe any of these possibilities and the trial court had no occasion to consider them.

The situation we face here parallels closely one which confronted the United States Supreme Court in *Fahy* v. *Connecticut* (1963) 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229]. In *Fahy*, the prosecution had built its case largely upon illegally seized evidence, coupled with extrajudicial confessions and testimonial admissions by both defendants. Because the trial in *Fahy* took place before the decision in *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R. 2d 933], the "petitioner was unable to claim at trial that the illegally seized evidence induced his admissions and confession." (375 U.S. at p. 90.) ▮▮▮ Formulating the constitutionally required test for assessing the prejudicial effect of illegally obtained evidence under such circumstances, the court said: "We are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." (375 U.S. at pp. 86-87.) The court found the requisite "reasonable possibility" in *Fahy*, stressing the fact that "[i]t was only after admission of the [challenged evidence] . . . and only after introduction of the confession that the defendants took the stand, [and] admitted their acts. . . ." (375 U.S. at p. 91.) Given this "indication of the prejudicial effect of the erroneously admitted evidence" (*ibid.*), the court concluded that "petitioner should have had a chance to show that his admissions were induced by being confronted with the illegally seized evidence." (*Ibid.*)

In the application of *Fahy* v. *Connecticut, supra,* nothing can turn upon the distinction between verbal and physical

P.2d 620]; *People* v. *Brooks* (1966) 64 Cal.2d 130, 135 [48 Cal.Rptr. 879, 410 P.2d 383]; *People* v. *Green* (1965) 63 Cal.2d 561, 564 fn. 3 [47 Cal.Rptr. 477, 407 P.2d 653]; *People* v. *Aranda* (1965) 63 Cal.2d 518,

evidence. (See *Fahy* v. *Connecticut, supra,* 375 U.S. 85, 90-91; *Wong Sun* v. *United States* (1963) 371 U.S. 471, 485-486 [9 L.Ed.2d 441, 83 S.Ct. 407]; *People* v. *Bilderbach* (1965) 62 Cal.2d 757, 764-768 [44 Cal.Rptr. 313, 401 P.2d 921]; cf. *People* v. *Schaumloffel* (1959) 53 Cal.2d 96, 102 [346 P.2d 393] (per curiam).) Indeed, we have repeatedly applied *Fahy* in deciding whether or not a defendant's trial testimony was impelled by the use of a confession violative of *Escobedo* and Dorado.[7]

Because the trial here preceded the decisions in *Escobedo* and *Dorado,* the defendant in this case, like the petitioner in *Fahy,* was "unable to claim . . . that [his illegally obtained confession] induced his [testimonial] admissions. . . ." (375 U.S. at p. 90.) Here, as in *Fahy,* the precise issue which we are therefore called upon to resolve is "whether there is a *reasonable possibility* that the evidence complained of" (italics added) (375 U.S. at p. 86)—in this case, the extrajudicial statement—"*might* have contributed to the conviction" (italics added) (*id.,* at pp. 86-87)—in this case, by inducing the defendant's judicial confession of guilt.

Under the circumstances of the instant case, we cannot realistically ignore the possibility that defendant's extrajudicial confession *might* have impelled his subsequent confession in court. ▮ We recognize that no court has ever "gone so far as to hold that making a confession under circumstances which preclude its use, perpetually disables the confessor from making a usable one after those conditions have been removed." (*United States* v. *Bayer* (1947) 331 U.S. 532, 540-541 [91 L.Ed. 1654, 67 S.Ct. 1394].) Nonetheless, the courts have not been blind to the fact that "after an accused has once let the cat out of the bag by confessing, no matter what the inducement, he is never thereafter free of the psychological and practical disadvantages of having confessed. He can never get the cat back in the bag. The secret is out for good." (*Id.,* at p. 540.) In this sense, a later confession may always be viewed in part as fruit of the first. (See Note (1963) 72 Yale L.J. 1434, 1442-1443.) We must therefore recognize that it is always *possible* that an improperly obtained confession

523 [47 Cal.Rptr. 353, 407 P.2d 265]; *People* v. *Davis, supra,* 62 Cal.2d 791, 796; *People* v. *Hillery* (1965) 62 Cal.2d 692, 711-712 [44 Cal.Rptr. 30, 401 P.2d 382]; *People* v. *Lilliock* (1965) 62 Cal.2d 618, 621 [43 Cal. Rptr. 699, 401 P.2d 4].)

[7]See, e.g., *People* v. *Gilbert, supra,* 63 Cal.2d 690, 701; *People* v. *Stockman, supra,* 63 Cal.2d 494, 502; *People* v. *Polk, supra,* 63 Cal.2d 443, 449; *People* v. *Clark, supra,* 62 Cal.2d 870, 881.

will induce the defendant to render a later admission of guilt. "Admittedly, it is difficult to determine whether there is a connection between two confessions. But, human nature being what it is, we must recognize a presumption that one is the fruit of the other." (*Killough* v. *United States* (1962) 114 App.D.C. 305 [315 F.2d 241, 249] (Wright, J., concurring); see also *People* v. *Jones, supra,* 24 Cal.2d 601, 609-610.)

 To overcome the likelihood that the erroneous introduction of defendant's extrajudicial confession impelled his testimonial one, the State bears the burden of showing that the causative link between the two confessions had been broken. "[T]he beneficiary of a constitutional error [must] prove *beyond a reasonable doubt* that the error complained of did not contribute to the verdict obtained." (Italics added.) · (*Chapman* v. *California, supra,* 386 U.S. 18, 24 [17 L.Ed. 2d 705, 87 S.Ct. 824].) The prosecution has failed to do so here. Instead, the prosecution urges us to speculate upon the defendant's motives for testifying and to infer, from a record which leaves the issue completely unexplored, that his decision to confess in court did not emanate from the erroneous receipt in evidence of his extrajudicial statement of guilt. We cannot posit so important a determination upon so conjectural a base.[8]

Although substantial evidence other than defendant's extrajudicial confession connected him with the crime,[9] his case had been shattered by the "evidentiary bombshell" of that

---

[8]In this respect, the present case differs markedly from those cases in which the defendant himself expressly identified an independent motive for his decision to confess in court and thereby negated the possibility that his testimonial admission of guilt had been motivated by the erroneous use of his extrajudicial confession. (See, e.g., the *Seiterle* and *Enriquez* cases, discussed above in fn. 3; see also *People* v. *Reid* (1965) 233 Cal.App.2d 163, 175 [43 Cal.Rptr. 379].) The extrajudicial statement of the defendant in *Reid,* for example, was only partially inculpatory, but he elected to take the witness stand and there volunteered a full confession. "Defendant Reid gave as his reason for changing his story on the stand without apparent warning even to his counsel that, 'Well, I just wanted the truth brought out, your Honor.'" (*People* v. *Reid, supra,* 233 Cal.App.2d 163, 175.) On this evidence, the court concluded that defendant's unlawfully obtained statement "was not the motivation for the confession on the stand." (*Ibid.*) In the present case, however, any such conclusion could rest only on unfounded speculation.

[9]If the prosecution had presented no substantial evidence of defendant's guilt apart from his extrajudicial confession, then the present case would be controlled by our previous decisions holding that, under such circumstances, the defendant's testimonial confession must be deemed to have been impelled by the erroneous introduction of his out-of-court statement and that the resulting conviction must therefore be reversed. (See the cases cited in fn. 4, *supra.*)

169

confession. (See *People* v. *Schader, supra,* 62 Cal.2d 716, 731; *People* v. *Parham, supra,* 60 Cal.2d 378, 385.) In light of the overwhelming damage thereby inflicted by the prosecution, we must surely acknowledge at least a ''reasonable possibility'' that the defendant took the stand in part because a confession which he erroneously believed admissible had completely demolished his prospects for a favorable verdict.[10] In recognizing such a possibility here, we do no more than heed the admonition of Justice Cardozo: ''The springs of conduct are subtle and varied. One who meddles with them must not insist upon too nice a measure of proof that the spring which he released was effective to the exclusion of all others.'' (*De Cicco* v. *Schweizer* (1917) 221 N.Y. 431, 438 [117 N.E. 807].)[11]

We conclude that the record in this case fails to dispel beyond a reasonable doubt the possibility that the defendant took the stand in an attempt to mitigate the explosive impact of a confession which had left his case in ruin. Given that possibility, we cannot sever defendant's confession in the courtroom from his confession at the police station in order to render harmless the underlying violation of *Escobedo* and *Dorado*. Defendant's two confessions, viewed together, worked such prejudice as to compel reversal.

The judgment is reversed.

---

[10]Just as we have accorded different treatment to confessions and exculpatory statements in evaluating their probable impact upon a jury (see, e.g., *People* v. *Hillery, supra,* 62 Cal.2d 692, 712), so too we must distinguish between inculpatory and exculpatory statements in determining whether a defendant's decision to take the stand was influenced by the erroneous use of his statements at trial.

The instant case thus stands in stark contrast to those cases in which we held that the introduction of an improperly obtained *exculpatory* statement did not impel the defendant to take the stand and therefore did not require reversal of the ensuing conviction. (See, e.g., *People* v. *Hillery, supra,* 62 Cal.2d 692, 712-713; *People* v. *Nye* (1965) 63 Cal.2d 166, 175 [45 Cal.Rptr. 328, 403 P.2d 736]; *People* v. *Mathis* (1965) 63 Cal.2d 416, 433 [46 Cal.Rptr. 785, 406 P.2d 65].) In *Nye*, for example, we noted that the defendant's ''testimony went far beyond the relatively innocent conduct related to his [extrajudicial] statements.'' (63 Cal.2d 166, at p. 175.) There could therefore be no dispute, we concluded in *Nye*, ''that [defendant] chose to testify in order to discount the very incriminating testimony of the prosecution's witnesses.'' (*Ibid.*) In applying this analysis, the Courts of Appeal have properly confined it to cases in which erroneously admitted *exculpatory* statements were followed by damaging testimonial admissions. (See, e.g., *People* v. *Brice* (1966) 239 Cal.App.2d 181, 194 [48 Cal.Rptr. 562]; *People* v. *Anderson, supra,* 236 Cal.App.2d 419, 429-430; cf. *People* v. *Green* (1965) 236 Cal. App.2d 1, 25-26 [45 Cal.Rptr. 744].)

[11]The prosecution, at least, believed that it could materially strengthen its chances of obtaining a conviction by introducing defendant's confession in evidence. For us to second-guess that judgment now, or to demand

Traynor, C. J., Peters, J., Burke, J., Sullivan, J., and Roth, J. pro tem.,* concurred.

McCOMB, J.—I dissent. I would affirm the judgment. Applying the "harmless error" rule (Cal. Const., art. VI, § 13▮; *Fahy* v. *Connecticut*, 375 U.S. 85 [11 L.Ed.2d 171, 84 S.Ct. 229]; *Chapman* v. *California*, 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]), it is my opinion that there is no reasonable possibility that the evidence complained of might have contributed to the conviction.

that defendant demonstrate that when he decided to testify he shared the prosecution's estimate of the significance of his confession, would require an unwarranted departure from precedent (e.g., *Chapman* v. *California, supra,* 386 U.S. 18 [17 L.Ed.2d 705, 86 S.Ct. 824]; *Fahy* v. *Connecticut, supra,* 375 U.S. 85; *People* v. *Schader, supra,* 62 Cal.2d 716; *People* v. *Parham, supra,* 60 Cal.2d 378; *People* v. *Jones, supra,* 24 Cal.2d 601) and could only serve to encourage law enforcement authorities to employ confessions of doubtful validity in cases which seem unlikely to lead to convictions unless such confessions are introduced at trial.

*Assigned by the Chairman of the Judicial Council.