Manuel SAMORA, Jr., Appellant,

v.

UNITED STATES of America,
Appellee.

No. 24243.

United States Court of Appeals
Fifth Circuit.

Jan. 30, 1969.

Rehearing and Rehearing En Banc
Denied April 3, 1969.

**1096**

John P. Otto, Alamogordo, N. M., for appellant.

Harry Lee Hudspeth, Asst. U. S. Atty., El Paso, Tex., for appellee.

Before BELL, COLEMAN and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

The appellant was convicted by a jury of violating 22 U.S.C.A. § 1934 and regulations issued thereunder by attempting to export four pistols without obtaining an export license.

A customs agent stopped the car driven by appellant in the customs inspection area adjacent to an international bridge in El Paso, Texas, within a few feet of the actual exit to Mexico. Appellant stated he was going to Mexico and that he was taking no merchandise with him. The car was searched, without a warrant, and the pistols found concealed in a fender well.

Samora makes several arguments: the information against him did not state an offense; § 1934 is unconstitutional; the search of the car was illegal; an incriminating statement made by him should have been suppressed and was improperly admitted into evidence; evidence of theft of the pistols was improperly admitted into evidence; he was improperly denied the right to subpoena certain witnesses at government expense.

■ We deal initially with the contention that the information should have been quashed because it failed to state a crime. Appellant's argument runs this way. The information charges an attempt to export firearms. Sec. 1934 [1]

---

1. 22 U.S.C.A. § 1934. Munitions control—
Authority of President

(a) The President is authorized to control, in furtherance of world peace and the security and foreign policy of the United States, the export and import of arms, ammunition, and implements of war, including technical data relating thereto, other than by a United States Government agency. The President is authorized to designate those articles which shall be considered as arms, ammunition, and implements of war, including technical data relating thereto, for the purposes of this section.

Registration of manufacturers, exporters, and importers

(b) As prescribed in regulations issued under this section, every person who engages in the business of manufacturing, exporting, or importing any arms, ammunition, or implements of war, including technical data relating thereto, designated by the President under subsection (a) of this section shall register with the United States Government agency charged with the administration of this section, and, in addition, shall pay a registration fee which shall be prescribed by such regulations. Such regulations shall prohibit the return to the United States for sale in the United States (other than for the Armed Forces of the United States and its allies) of any military firearms or ammunition of United States manufacture furnished to foreign governments by the United States under this chapter or any other foreign assistance program of the United States, whether or not advanced in value or improved in condition in a foreign country. The prohibition shall not extend to similar firearms that have been

does not make the attempt to export a crime. The section delegates to the President only that power referred to in the second sentence of subsection (a), the power to designate what shall be considered as "arms, ammunition, and implements of war." Therefore, the attempt provisions of 22 CFR § 126.01,[2] being beyond the subject matter as to which power is conferred on the President, have no application. Also, since there is no federal common law of crimes the elements of the offense must be stated in the statute itself. Because Congress has chosen on other occasions to expressly create attempt offenses[3] and did not include attempt language in § 1934 there was no congressional intent to create an offense of attempting to export firearms.[4]

Appellant's argument is based on a misreading of the statute. The President, by the first sentence of § 1934, is "authorized to control, in furtherance of world peace and the security and foreign policy of the United States, the export and import of arms, ammunition and implements of war."

▆▆ Also appellant says that the language of subsection (b) of § 1934 causes the statute to reach only one who "*engages in the business* of manufacturing, exporting, or importing any arms, ammunition, or implements of war * * designated by the President under subsection (a)," and does not reach the isolated act of one not engaged in the business. But subsection (c) is in terms of violation by "any person" who violates any rule or regulation issued under the section or wilfully makes an untrue statement or omits a material fact in a registration or license application. The regulation requiring a license to export the items listed by the President, 22 CFR § 123.02,[5] is not limited to the export by one engaged in the business. Nor is the regulation providing for applications for licenses so limited. 22 CFR § 123.01.[6]

so substantially transformed as to become, in effect, articles of foreign manufacture.

Penalties for violations

(c) Any person who willfully violates any provision of this section or any rule or regulation issued under this section, or who willfully, in a registration or license application, makes any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein not misleading, shall upon conviction be fined not more than $25,000 or imprisoned not more than two years, or both.

2. 22 CFR § 126.01. Violations in general.
   It shall be unlawful for any person to export or attempt to export from the United States any of those articles designated by the U. S. Munitions List or to import or attempt to import such articles into the United States without first having obtained a license therefor, unless written approval was obtained from the Department of State or an exemption from this requirement is authorized by this subchapter.

3. See 18 U.S.C.A. § 2113 (attempted bank robbery); 22 U.S.C.A. § 401 (forfeiture of vehicles or vessels used in attempted illegal exportation).

4. Alterman Transport Lines, Inc. v. United States, 255 F.2d 125 (5th Cir. 1958), urged upon us as dispositive of the theory that there is no crime of attempt to export, does not apply. The defense in that case was charged with violation of 49 U.S. C.A. § 322(g), which provides: "Any motor carrier * * * who shall * * knowingly and wilfully file with the Commission any false report, account, record * * * shall be deemed guilty of a misdemeanor * * *" The information was found defective because it charged only that defendant "did knowingly and wilfully make and prepare for filing" a report, and did not allege that the report was filed.

5. 22 CFR § 123.02. Export license.
   Articles on the U. S. Munitions List may not be exported from the United States until a license has been issued, or unless covered by an exemption provision of this subchapter. Prior to the issuance of an export license, the Department of State may also require documentary information pertinent to the proposed transaction.

6. 22 CFR § 123.01. Application for license.
   Persons who intend to export from or import into the United States any of the

Next we consider the constitutional questions raised by appellant related to delegation of power to the President by the Congress.

■ The delegation to the President by subsection (a) of the power "to control, in furtherance of world peace and the security and foreign policy of the United States, the export and import of arms, ammunition, and implements of war, including technical data relating thereto," is directed to the conduct of international affairs, in which the executive branch of our government traditionally has been dominant. In the field of foreign affairs the authority delegated to the President may be broader and the requisite standards more general than in matters purely domestic. Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed. 2d 179 (1965); United States v. Curtiss-Wright Export Corporation, 299 U.S. 304, 57 S.Ct. 216, 81 L.Ed. 255 (1936). We conclude that the policy is sufficiently defined and the standards sufficiently definite that the delegation by § 1934 is constitutional. United States v. Rosenberg, 150 F.2d 788 (2d Cir.) cert. denied 326 U.S. 752, 66 S.Ct. 90, 90 L.Ed. 451 (1945); Zemel v. Rusk, supra; United States v. Curtiss-Wright Export Corporation, supra; United States v. Bareno, 50 F.Supp. 520 (D.Md.1943). See also, Randall v. United States, 148 F.2d 234 (5th Cir.) cert. denied 325 U.S. 885, 65 S.Ct. 1579, 89 L.Ed. 2000 (1945); O'Neal v. United States, 140 F.2d 908 (6th Cir. 1944).

■ A more particularized inquiry into the constitutional validity of the delegation arises from the fact that by interplay of the statute, the designation made by the President under the statute, and the regulations issued pursuant to the statute, acts are made a crime and sanctions imposed. The sanction is imposed by § 1934(c).[7] It long has been established that Congress may validly provide a criminal sanction for the violation of rules or regulations which it has empowered the President or an administrative agency to enact. The leading case is still United States v. Grimaud, 220 U.S. 506, 31 S.Ct. 480, 55 L.Ed. 563 (1911).[8] See also: McKinley v. United States, 249 U.S. 397, 39 S.Ct. 324, 63 L.Ed. 668 (1919); Avent v. United States, 266 U.S. 127, 45 S.Ct. 34, 69 L.Ed. 202 (1924); Singer v. United States, 323 U.S. 338, 65 S.Ct. 282, 89 L.Ed. 285 (1944); United States v. A & P Trucking Corp., 113 F.Supp. 549 (D.N.J.1953); United States v. Rosenberg, supra.

■ The search of the car was valid. Under 22 U.S.C.A. § 401 the customs agents were entitled to detain the car, make a reasonable search and seize the arms. United States v. Chabot, 193 F.2d 287 (2d Cir. 1951). There was probable cause to believe that arms were intended to be exported or taken out of the United States. The Chief of Police of Alamogordo, New Mexico, had notified one of the agents that defendant and another person were enroute to El Paso. He furnished a description of the vehicle

articles enumerated in the U. S. Munitions List shall make application to the Office of Munitions Control, Department of State, Washington, D.C. 20520, on form DSP-5 in the case of exports and DSP-38 in the case of imports. Application for intransit license shall be made on form DSP-61. Application for license to export technical data shall also be made on form DSP-5 (see Part 125 of this chapter).

7. See Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944).

8. Professor Jaffe states, concerning *Grimaud:*
"The famous case of United States v. Grimaud is an authoritative decision

that an officer may be empowered to make rules, violation of which will be ipso facto penal. It was argued that this delegates power to create new crimes, a power reserved to the legislature. But it was answered that Congress makes the crime. Today we would probably say that Congress and the officer together make the crime, the officer acting within the intelligible limits established by Congress."
L. Jaffe, Judicial Control of Administrative Action, 109–10 (1965); see also Schwenk, The Administrative Crime, Its Creation and Punishment by Administrative Agencies, 42 Mich.L.Rev. 51, 59 (1943).

they were in and its license number, and told the agent that in all probability they would attempt to export the weapons and sell them in Mexico. The Chief of Police had furnished information to the customs service before, and it had proved to be reliable. We need not consider other grounds on which the government claims the search was valid.

At the time of arrest Samora was taken into the Customs House and interrogated by one of the agents. He was given a warning which complied with some of the *Miranda* requirements, but the government recognizes it did not comply with all. Samora confessed, but the confession was not offered at the trial.

■ Later that day—the record does not indicate precisely how long—appellant was taken before a United States Commissioner. He was given an adequate warning. He affirmatively waived counsel. He was subjected to no interrogation of any kind. However, at or immediately following the hearing he voluntarily made statements incriminating himself and exculpating his companion. The companion was released. At the trial testimony was allowed by a customs agent, describing the volunteered and incriminating statements given at the Commissioner's hearing. This was not error. Appellant contends that Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) forbids the use of the second statement, citing Westover v. United States, 384 U.S. 436, 494, 86 S.Ct. 1602, 16 L.Ed. 694, 735 (1966) and Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967). *Westover* and *Clewis* relate to second statements obtained by custodial interrogation, after initial incriminating statements have been obtained without proper warnings.[9] The district court pointed out that the desire and intent of appellant to get his companion out of the matter and away from the difficulty, and the volunteering of the statements for that purpose in the complete absence of interrogation and after a full warning, caused him to find no compul-

sion or taint. There had been "the intervention of a clear act of free will on the part of the defendant." Rogers v. United States, 330 F.2d 535, 541 (5th Cir.) cert. denied 379 U.S. 916, 85 S.Ct. 265, 13 L.Ed.2d 186 (1964); Thomas v. United States, 377 F.2d 118 (5th Cir. 1967).

■ The admission of evidence tending to connect appellant with theft of the firearms in a New Mexico burglary was not erroneous. Roe v. United States, 316 F.2d 617 (5th Cir. 1963); Rodriguez v. United States, 284 F.2d 863 (5th Cir. 1960). Willfulness is an element of the offense under § 1934. Unless there were evidence to connect Samora with the guns there might exist reasonable doubt of his knowledge of their concealed presence. Guevara v. United States, 242 F.2d 745 (5th Cir. 1957).

■ The district court did not err in denying a motion to subpoena a justice of the peace, the police chief and a police officer from New Mexico pursuant to Fed.R.Crim.P. 17(b). The trial judge has wide discretion in this regard. Taylor v. United States, 329 F.2d 384 (5th Cir. 1964). No affidavits were made as required by the rule. The police officer and police chief were present at the trial and not called as witnesses by defendant, and the evidence which Samora intended to adduce by the justice of the peace (that charges against him relating to theft of the firearms in a burglary had been dismissed) was in substance received in the hearing on motion to suppress.

Affirmed.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is Denied.

9. People v. Spencer, 66 Cal.2d 158, 57 Cal. Rptr. 163, 424 P.2d 715 (1967) does not apply. Defendant's confession, obtained without proper warning, was admitted into evidence. The defendant took the stand and confessed his guilt. The state contended unsuccessfully that the admission of guilt made the introduction of the statement harmless error.