MÁXIMO J. CERAME–VIVAS, Petitioner and Appellant, *v.* MANUEL TORRES AGUIAR, SECRETARY OF HEALTH OF THE COMMONWEALTH OF PUERTO RICO, Respondent and Appellee.

No. O-69-179.     Decided April 20, 1970.

H. *Febus Bernardini* for appellant. *Gilberto Gierbolini, Solicitor General,* and *Elpidio Arcaya, Assistant Solicitor General,* for appellee.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Appellant filed a petition in the Superior Court, San Juan Part, in which he alleged that a group of industrial enterprises, and summer houses at the area of La Parguera, Lajas, are dumping their effluents and wastes into the coastal waters without any treatment or without adequate treatment, making them noxious to human health, to that of animals, vegetables or fish, in violation of the Water Pollution Control Act (Act No. 142 of May 1, 1950, as amended in 1952—24 L.P.R.A. §§ 591–601); that the Secretary of Health, with full knowledge of the acts of pollution performed by said

enterprises, has refused to take the necessary measures provided by law: that there is no adequate relief at law. He requested the court to order appellee to proceed to file the legal actions established by Act No. 142 and especially the remedy of injunction.

Appellee requested the dismissal of the petition to which the trial court consented because (1) the choses of action which arise from Act No. 142 shall inure to the benefit of the Commonwealth of Puerto Rico and not to property owners or between individuals and (2) "Once said pollution standards are fixed and the order issued, the Secretary of Health may exercise the action of injunction against the violators of said order and regulations, the Act granting him the discretion to exercise the same, whenever in his judgment, the seriousness of the case may so warrant. Upon providing in the statute that the remedy of injunction shall lie whenever, in the judgment of the Secretary, the seriousness of the case may so warrant, the lawmaker has granted a discretional authority to said officer to act or not, which renders the petition for mandamus untenable pursuant to the case law doctrine established by our Supreme Court."

Appellant points out four constitutional questions and, also, assigns that the trial court erred in concluding that the Secretary of Health does not have any ministerial duty of filing the injunction under Act No. 142; in deciding that the criminal action provided by said act does not lie; and in ruling that if a serious situation of water pollution existed, the Secretary of Health has discretional authority to act according to his judgment.

The constitutional questions presented are the following:

(1) That an executive officer lacks any discretion by legislative grace to exercise and enforce a provision of a constitutional nature and of public policy as is the one contained in § 19 of Art. VI of the Constitution of Puerto Rico

". . . to conserve, develop and use its natural resources in the most effective manner possible for the general welfare of the community."

(2) That Act No. 142 is unconstitutional insofar as it permits minimum standards for water pollution without said act establishing any standards or guides to regulate the administrative action, thus violating the principle of separation of powers.

(3) That Act No. 142 having been promulgated prior to the Constitution, it was repealed by the latter when the preservation of our natural resources was given constitutional rank.

(4) That when an act grants absolute and unlimited discretion to an executive officer it denies the community and its members the equal protection of the laws and the enjoyment of the democratic system.

These contentions are slightly discussed in appellant's memorandum without stating the reasons upon which they are based nor the authorities which support them. The Solicitor General limits himself to inform us about the absence of legal merits of the same.

Section 5 of said Act No. 142 provides that it shall be unlawful for any person to throw or pour into the waters, any matter capable of polluting said waters.[1] (24 L.P.R.A. § 595.)

Section 6 of said act provides for the issuance of final orders by the Secretary of Health to the effect that the persons who were throwing sewage or industrial waste or any other refuse into water, cease doing so (24 L.P.R.A. § 596).

---

[1] "It shall be unlawful for any person, directly or indirectly, to throw, discharge, pour, or dump, or permit to be thrown, discharged, poured or dumped into the waters, any organic or inorganic matter capable of polluting or of leading to the pollution of said waters in such manner as to place them out of the minimum standards of purity that the Secretary of Health may establish under section 599 of this title."

These orders shall be issued after the undesirable pollution thus caused has been determined.[2]

Section 7 provides moreover, that no new discharge of sewage, waste or any other refuse may be made into the waters except upon authorization issued by the Secretary of Health.[3] (24 L.P.R.A. § 597.)

Section 8 of said act provides that the Secretary shall make the necessary regulations to carry out the purposes of said act and that such regulations may limit the potential polluting content and may prescribe measures to prevent or abate such pollution.[4] (24 L.P.R.A. § 598.)

---

[2] "Any person who upon the taking effect of sections 591–601 of this title may be throwing, discharging, pouring or dumping sewage or industrial waste or any other refuse into any waters, regardless of whether he started or continued doing so under a former Act, shall cease to do so upon receipt of a final order therefor issued by the Secretary; Provided, however, That no such final order shall be issued until after one year from the date the undesirable pollution thus caused was determined, and notice thereof was served on said person to correct the situation; except that the term of one year shall not apply where, in the judgment of the Secretary, there is an urgent menace to the public health."

[3] "After sections 591–601 of this title take effect, no new discharge of sewage, industrial waste or any other refuse, may be made into the waters, except upon specific authorization therefor issued by the Secretary, upon application for the purpose which shall be made according to the regulations the Secretary may prescribe. It shall be unlawful for any person, without having first submitted to the approval of the Secretary plans and other reports, and without having obtained authorization therefor, to construct or install, or in any manner whatever make a discharge to dump or discharge sewage or industrial or any other refuse into the waters, or to change or extend, or to reconstruct, or in any way alter any existing system or part thereof, or to operate a new or already existing system, or one that has been changed, extended, reconstructed or altered without prior authorization."

[4] "The Secretary shall make, according to the procedure fixed in section 179 of Title 3, the necessary regulations to carry out the purposes of sections 591–601 of this title. The regulations thus adopted may limit the potential polluting content in any substance to be thrown, discharged, poured or dumped into any waters, and may prescribe measures to prevent or abate such pollution."

Section 9 of Act No. 142 establishes that the Secretary of Health shall fix, by regulation, the pollution standards.[5]

Section 10 of Act No. 142 (24 L.P.R.A. § 600) provides that:

"Choses of action resulting from the violation of the provisions of sections 591–601 of this title or its regulations shall inure to the benefit of the Commonwealth only. Sections 591–601 of this title shall not be construed in the sense of creating new rights to property owners or private entities, nor of increasing rights already existing. A determination of the Secretary to the effect that there exists a certain pollution or that there is a violation of any of the provisions of sections 591–601 of this title or of the regulations hereunder—whether or not the same is liable to prosecution by the Commonwealth—shall not give rise to any issue of law or question of fact for the benefit of any party other than the Commonwealth."

Section 11 (24 L.P.R.A. § 601) provides that the person who performs one or more of such acts of pollution after having received a final order to the effect that he shall cease to do it, as established in § 6 of said act, shall be punished by a fine of not less than $100, nor more than $1,000, or by imprisonment in jail for a term not less than 90 days nor more than one year, for each violation; it being further provided that injunction shall lie against any person who violates the provisions of said act "whenever, in the judgment of the Secretary, the seriousness of the case may so warrant."

On December 24, 1968, Sanitary Regulation No. 131 was approved to establish by way of amendments, and in effect establishes, the classification and standards of Quality for the Coastal Waters of Puerto Rico as provided in § 8 of Act No. 142. In synthesis it prohibits the discharge into coastal waters of domestic or industrial sewage which places said

---

[5] "The Secretary shall by regulation fix the maximum pollution standards that will be permitted or tolerated in the waters, according to the public or private use made or that may be made thereof, and shall fix the minimum volume which, under foreseeable normal or abnormal circumstances, may flow in the currents."

waters out of the minimum standards of quality or purity established by this regulation. The Secretary may authorize such discharges when the substances which are to be thrown into the waters have been submitted to a proper degree of treatment.

■■ A statute is, and is presumed to be, constitutional until we decide otherwise. It should be given a reasonable construction consistent with the legislative purpose and a literal interpretation which would lead to absurd consequences should be avoided. *Esso Standard Oil* v. *P.R.P.A.*, 95 P.R.R. 754, 765 (1968).

■ The constitutional guarantee established in § 19 of Art. VI of the Constitution of the Commonwealth of Puerto Rico is not limited to the conservation of our natural resources in the most effective manner, but it also includes the development and use thereof, so that we cannot agree with appellant that Act No. 142 is in conflict with said guarantee, but that, on the contrary, it is directed to complement it and give it thorough effect.

■ Regulation No. 131 does not constitute an undue delegation of powers. Sections 8 and 9 of Act No. 142 prescribe the standards and guides which are used as a frame within which the Secretary has issued his Regulation No. 131. *López* v. *Planning Board*, 80 P.R.R. 625, 638 (1948) ; *Hilton Hotels* v. *Minimum Wage Board*, 74 P.R.R. 628, 648 (1953) ; *McKinley* v. *United States*, 249 U.S. 397 (1919) ; *Samora* v. *United States*, 406 F.2d 1095, 1098 (5th Cir. 1969) ; *Clayton* v. *Bennett*, 298 P.2d 533, 535 (Utah 1956) ; 1 Davis, Administrative Law Treatise 89, § 2.04.

■■ Appellant indicates in his petition that the Secretary of Health has refused to take the necessary measures to avoid the alleged pollution of the waters. We may infer that this allegation entails the petition to provide for the compliance by said officer with his duties under Act No. 142 and

Regulation No. 131. To those effects we agree with the trial court that appellant has standing for such ends.[6] We also conclude that the obligation to investigate the quality of the waters and to issue orders to produce the discontinuance of the pollution thereof are ministerial functions imposed on the Secretary of Health by Act No. 142 and by Regulation No. 131.

▉ Likewise we conclude that § 10 of Act No. 142 does not preclude the trial court from ordering the Secretary of Health to verify the quality of the waters, and when necessary, to issue orders to cease the pollution thereof. What said section in effect precludes is the filing of legal actions by individual citizens against persons or enterprises which have allegedly incurred in practices resulting in the pollution of waters in order to avoid the continuation of said practices and to punish them.

It does not appear from the record, nor has appellant alleged in his petition, that the Secretary has made the analysis and taken such other necessary measures to determine whether the industries named are throwing their effluents and wastes into the coastal waters of Puerto Rico without adequate treatment, and, if it were true, whether in effect they affect the quality of the waters as specified in Regulation No. 131, and the degree of such pollution.

It is not possible for the Secretary to take any action under § 11 of Act No. 142 until the measures previously indicated have been taken. Also, before proceeding to impose one of the penalties indicated, the Secretary has to issue a final order prohibiting the continuation of the practice of throwing effluents and wastes to the extreme of creating an undesirable pollution in the coastal waters.

---

[6] *Association of Data Processing* v. *Camp* and *Barlow* v. *Collins*, decided by the Supreme Court of the United States on March 3, 1970 (38 L.W. 4193 and 4195).

It is proper, therefore, to remand the case to the trial court to determine whether the Secretary of Health has refused to perform the tests for pollution of the coastal waters in question and, in case he has refused, he should be ordered to proceed and perform them. In case he has determined that an undesirable pollution is being caused and he has not issued any order to avoid it, the court should order him to proceed pursuant to the provisions of § 6 of Act No. 142.

The Chief Justice and Mr. Justice Dávila did not participate herein. Mr. Justice Blanco Lugo concurs in the result.